UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT INTERNATIONAL BRIDGE
COMPANY,

      Plaintiff,

v.

FEDERAL HIGHWAY
ADMINISTRATION and JAMES STEELE
in his capacity as Michigan Administrator
for the Federal Highwy Administration,

      Defendants.
_____/

Case No. 09-13805

Honorable Patrick J. Duggan

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 13, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On September 25, 2009, the Detroit International Bridge Company ("DIBC") filed a complaint seeking to enjoin the Federal Highway Administration ("FHWA") and its Michigan Administrator James Steele ("Steele") from disclosing a 2007 inspection report regarding the Ambassador Bridge.[1] The complaint alleges that disclosure of the report would violate the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; violate the Critical

---

[1] "The Ambassador Bridge is North America's busiest border crossing," allowing travelers to cross the river separating Detroit and Windsor. (Compl. ¶ 10.)

Infrastructures Protection Act, 42 U.S.C. § 5195c; and amount to a breach of contract. Prior to the filing of the complaint, FHWA informed DIBC of its intent to disclose the report on September 28, 2009, in response to a FOIA request. Presently before the Court is DIBC's Emergency Motion for a Temporary Restraining Order ("TRO"), filed on September 28, 2009. On September 29, 2009, defense counsel filed his response and the Court heard argument on the motion. On October 5, 2009, DIBC filed a supplemental brief in support of the emergency motion. For the reasons set forth below, the Court denies DIBC's motion.

**I. Factual and Procedural Background**

The circumstances giving rise to this case begin with a contract entered into by DIBC, the private owner of the Ambassador Bridge, and the Michigan Department of Transportation ("MDOT"). That contract, the 2004 Gateway Agreement, requires DIBC to provide MDOT with annual inspection reports regarding the safety of the bridge. In anticipation of requests for the report from third parties, the contract provides:

> The PARTIES agree that the bridge inspection reports contain sensitive security information, the public disclosure of which would be contrary to the public interest, and that, subject to the ultimate authority of the courts, the reports are exempt from public disclosure under the terms of the Freedom of Information Act. To assure that this exemption is recognized, the DIBC shall prominently stamp or print upon each page of the reports provided to [MDOT]: "CONFIDENTIAL REPORT - THIS REPORT IS EXEMPT AND NOT TO BE DISCLOSED UNDER THE FREEDOM OF INFORMATION ACT, IN ACCORDANCE WITH THE AGREEMENT BETWEEN THE BRIDGE COMPANY AND MDOT FOR THE GATEWAY PROJECT." If a request is made for access to, or a copy of, a bridge inspection report, by any entity other than the Federal Highway Administration, [MDOT] will promptly notify the DIBC and will assert its exemption from disclosure under the Freedom of Information Act.

(Compl. Ex. A ¶ 24E.) Pursuant to this clause, the 2007 inspection report submitted by

DIBC to MDOT contained a stamp on every page reflecting the all-caps language quoted above. Also pursuant to this clause, MDOT released the report to FHWA upon FHWA's request.

Meanwhile, FHWA has its own procedures for dealing with requests for confidential information. According to federal regulation: "If a request is received for information that has been designated by the submitter as confidential commercial information, . . . the submitter of such information will . . . be notified expeditiously and asked to submit any written objections to release." 49 C.F.R. § 7.17(a). Sometime after FHWA acquired the 2007 inspection report from MDOT, Congressman John Dingell requested that FHWA provide him with a copy of the most recent bridge inspection report for the Ambassador Bridge. In light of the stamp denoting the "confidential" nature of the report, FHWA notified MDOT and DIBC of Congressman Dingell's request in March 2009 and provided each entity an opportunity to submit objections to release of the report.

In the months that followed FHWA's notification, MDOT deferred to DIBC's explanations as to why the report qualifies as "confidential" and DIBC engaged in several rounds of correspondence with FHWA regarding its objections to release. In three separate letters to FHWA, DIBC expressed the following objections: (1) release of the report would violate the terms of the 2004 Gateway Agreement; and (2) disclosure of the report to FHWA by MDOT was in breach of the 2004 Gateway Agreement, requiring that FHWA return the "privileged" report to DIBC. DIBC also expressed concern about placing its explanation of the confidential nature of the report in writing out of fear that the explanation itself would compromise the confidential information DIBC seeks to protect.

In a letter dated September 14, 2009, FHWA informed DIBC that it had carefully considered DIBC's concerns but nonetheless had decided that it would release the report to Congressman Dingell on September 28, 2009. In the letter, FHWA explained that it is not bound by the 2004 Gateway Agreement, that it did not consider MDOT's disclosure of the report a breach of the 2004 Gateway Agreement, and that it is required to make its own determinations regarding disclosure under the FOIA. FHWA went on to explain that, having conducted its own analysis, it concluded that the report does not qualify as exempt from disclosure as confidential commercial or financial information under Exemption 4 of the FOIA. *See* 5 U.S.C. § 552(b)(4). Because the 2004 Gateway Agreement indicated that the report contains "sensitive security information," FHWA's letter went on to explain that FHWA did not consider release of the report a security risk. In conclusion, the September 14, 2009, letter noted that "[t]he decision to release a copy of the inspection report under FOIA is administratively final. The DIBC has the right to pursue appropriate judicial remedies." (Defs.' Resp. Ex. 1.) As noted above, DIBC pursued a judicial remedy by filing this lawsuit on September 25, 2009, and the motion for a TRO on September 28, 2009.

## II. Venue

Before addressing the merits of DIBC's claims and TRO motion, FHWA presents two challenges to the authority of the Court to hear the present lawsuit. In its first challenge, FHWA notes that DIBC's complaint alleges that "[v]enue is proper in this Court under 28 U.S.C. § 1391(e) because [FHWA] is an agency of the United States that maintains an office within this District at 315 W Allegan St # 211, Lansing, Michigan." (Compl. ¶ 6.) The problem with this allegation is that Lansing, Michigan, which is located in Ingham County,

4

is not within the Eastern District of Michigan. *See* 28 U.S.C. § 102(b).

Even so, the Court concludes that this is an appropriate venue for the case on other grounds. In an action where the United States is named as a defendant—as in this case—the lawsuit may be prosecuted where the plaintiff resides. 28 U.S.C. § 1402(a). Additionally, the general statute governing venue allows civil actions against "an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States" to be brought in any judicial district in which "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e). DIBC "resides" in the Eastern District of Michigan. (*See* Compl. ¶ 1.)

### III. Mootness

FHWA's second challenge to the Court's authority to hear this lawsuit presents a more troubling and complex question. FHWA argues that this Court lacks jurisdiction over the present lawsuit because the lawsuit has been rendered moot.[2] As explained above, DIBC's complaint and emergency motion for a TRO seek to enjoin FHWA from releasing the 2007 inspection report. Pursuant to FHWA's September 14, 2009, letter, however, the inspection report was released to Congressman Dingell on September 28, 2009. As a result, FHWA contends that this Court is incapable of fashioning any kind of meaningful relief for DIBC.

DIBC responded to FHWA's mootness argument in its October 5, 2009, supplemental

---

[2] "The duty of [the Supreme Court], as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653, 16 S. Ct. 132, 133 (1895).

5

brief in support of its motion for a TRO. Therein, DIBC argues that FHWA "cannot moot a case by taking illegal action when it has prior notice of the commencement of an action . . . ." (Pl.'s Supp. Br. at 5.) DIBC also complains that it was not given reasonable notice of FHWA's intent to disclose as required by 49 C.F.R. § 7.17(b). At the conclusion of its supplemental brief, DIBC makes several new requests for relief; DIBC now requests declarations from the Court regarding the content of the 2007 inspection report, declarations from the Court regarding the illegality of FHWA's conduct, a permanent injunction barring disclosure of the 2007 and any other inspection report by FHWA, a permanent injunction barring disclosure of the 2007 inspection report by anyone with actual knowledge of the Court's order, an award of costs incurred in litigating the lawsuit, and an award of any other just and equitable relief. (Pl.'s Supp. Br. at 17-18.)

Although the Court has concerns regarding the ability of a defendant to render a case moot by engaging in the very activity challenged by the plaintiff, the Court remains doubtful of its ability to offer an effective or meaningful remedy in this case. Importantly, "[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties."[3] *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (quotation omitted). Nonetheless, it has long been recognized that, "where a defendant with notice in an injunction proceeding completes the acts sought to be

---

[3]Although there are two recognized "exceptions" to the mootness doctrine—the "voluntary cessation" exception and the "capable of repetition yet evading review" exception—DIBC did not argue for these exceptions and the Court does not believe that either is relevant to the circumstances of this case. *See generally Youngstown Publ'g Co. v. McKelvey*, No. 05-3842, 189 Fed. Appx. 402, 405-07 (6th Cir. June 27, 2006).

6

enjoined[,] the court may by mandatory injunction restore the status quo."[4] *Porter v. Lee*, 328 U.S. 246, 251, 66 S. Ct. 1096, 1099 (1946).

A similar issue has arisen in at least two First Amendment cases where taxpayers sought to enjoin the disbursement of funds that the government ultimately disbursed before entry of a court order. *See Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278 (6th Cir. 2009); *Laskowski v. Spellings*, 443 F.3d 930 (7th Cir. 2006), *vacated for lack of standing by Univ. of Notre Dame v. Laskowski*, 551 U.S. 1160, 127 S. Ct. 3051 (2007). In those cases, the respective courts determined that the cases were not moot because, as parties to the lawsuits, the third party recipients of the funds could be ordered by the court to return the disbursements. *Am. Atheists*, 567 F.3d at 287-88; *Laskowski*, 443 F.3d at 934-36. In this case, however, the recipient of the 2007 inspection report is not a party to the lawsuit and, therefore, the Court has no jurisdiction to order return of the report.[5] Although DIBC has requested that this Court enjoin "any person with actual knowledge" of the Court's order from disclosing the inspection report, the Court is unaware of any authority that would make such an order binding.

---

[4]The Court remains uncertain whether FHWA had prior notice of the commencement of this action. Despite the September 14, 2009, letter declaring FHWA's intent to disclose the report on September 28, 2009, DIBC waited to file this lawsuit until *after* 5:00 P.M. on Friday, September 25, 2009. DIBC's emergency motion for a TRO was not filed until 3:50 P.M. on Monday, September 28, 2009. The Court is unaware of the time at which FHWA disclosed the report to Congressman Dingell on September 28, 2009, or whether FHWA had notice of the pending lawsuit when the disclosure was made. DIBC attempts to gloss over its failure to file this lawsuit earlier by alleging that FHWA induced it to believe, via telephone conversations, that its September 14, 2009, declaration of intent was being reconsidered.

[5]To the Court's knowledge, DIBC has made no effort to join Congressman Dingell as a party.

Because the Court remains troubled by the idea that the entire case could be unilaterally mooted by FHWA, the Court has attempted to divine some other "mandatory injunction" capable of restoring the "status quo." One possibility would be to order FHWA to request that Congressman Dingell return the report. Such an order would not be meaningful, however, in view of the fact that Congressman Dingell would still retain the ability to simply reject FHWA's request. *Cf. Laskowsi*, 443 F.3d at 934 (concluding that the district court could not order the government to seek repayment of disbursed funds because the government retains absolute discretion regarding when and whether to take such action). The Court has similar concerns regarding DIBC's requests that this Court "declare and adjudge" FHWA's conduct illegal. Typically, "requests for declaratory relief warrant caution" because they "require courts to face the difficult task of distinguishing between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2003). "Standing alone, an order from this court declaring that [FHWA violated the law] would have little, if any, impact on the current legal interests of the parties." *Id.* at 459.

Finally, the Court has considered the possibility that it could enjoin FHWA from any further disclosure of the 2007 inspection report. Because there is nothing to stop Congressman Dingell from independently disclosing the report, the Court remains skeptical that such an order would be considered "meaningful." Such an order, however, would be enforceable against FHWA. In this manner the Court may be able to "fashion *some* form of meaningful relief," even if it cannot "return the parties to the *status quo ante*." *Church of*

*Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 450 (1992).[6] Therefore, the Court cautiously proceeds to consider DIBC's motion for a TRO.[7]

## IV. Temporary Restraining Order

To determine whether the issuance of a temporary restraining order is appropriate in this case, the Court considers (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a TRO, (3) whether granting the TRO would cause substantial harm to others, and (4) whether the public interest would be served by granting the TRO. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

### A. Likelihood of Success

A majority of the briefing for the present motion addresses whether DIBC can show a strong likelihood of success on the merits of the case. FHWA first argues that DIBC is unlikely to succeed in this case because DIBC failed to state a claim in its complaint. The Court addresses this argument first because, if DIBC failed to state a claim, DIBC cannot succeed on the merits.

---

[6]In the same case, however, the Supreme Court noted that an injunction barring future conduct by the government could amount to an impermissible advisory opinion if there is no indication that the government would again engage in the prohibited conduct. *Id.*, 506 U.S. at 13 n.6, 113 S. Ct. at 450 n.6. This Court has no reason to believe that FHWA would release the 2007 inspection report absent another FOIA request and there is no guarantee that any such request will be filed in the future.

[7]This case would not be moot if DIBC was entitled to some form of monetary relief for FHWA's allegedly illegal conduct. *See Youngstown Publ'g Co. v. McKelvey*, No. 05-3842, 189 Fed. Appx. 402, 407 (6th Cir. June 27, 2006). As will be discussed in more detail below, however, DIBC's claim must be brought under the Administrative Procedures Act and that act does not allow for the recovery of money damages. *See Armendariz-Mata v. United States Dept. of Justice*, 82 F.3d 679, 682 (5th Cir. 1996).

DIBC refers to this lawsuit as a "reverse-FOIA" case. In a typical FOIA lawsuit, the plaintiff seeks to compel disclosure of certain information by the government. In a "reverse-FOIA" case, a party that has submitted information to the government seeks to prohibit disclosure to a third party. While reverse-FOIA cases do exist, FHWA argues that DIBC failed to properly allege such a claim in its complaint. DIBC's complaint sets forth three separate causes of action: (1) violation of the FOIA, (2) violation of the Critical Infrastructures Protection Act, and (3) breach of contract. None of these legal theories, however, state a cognizable claim for the relief sought by DIBC.

It is a bit of a misnomer to identify this case and others like it as "reverse-FOIA" cases. Contrary to what that label suggests, there is no private right of action under the FOIA to enjoin disclosure. *Chrysler Corp. v. Brown*, 441 U.S. 281, 294, 99 S. Ct. 1705, 1714 (1979) ("[T]he [FOIA] does not afford [a plaintiff] any right to enjoin agency disclosure."). This is because the FOIA is "solely a disclosure statute," *Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1184 (8th Cir. 2000); the exemptions provided under the FOIA "were only meant to permit [federal agencies] to withhold certain information, and were not meant to mandate nondisclosure." *Chrysler*, 441 U.S. at 294, 99 S. Ct. at 1713. Therefore, "the FOIA by itself protects the submitters' interest in confidentiality only to the extent that this interest is endorsed by the agency collecting the information." *Id.*, 441 U.S. at 293, 99 S. Ct. at 1713.

As a consequence, reverse-FOIA cases do not arise under the FOIA. Rather, reverse-FOIA cases "are actually brought under the [Administrative Procedures Act ("APA"), 5 U.S.C. § 702], which provides that '[a] person suffering legal wrong because of agency

10

action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof.'" *Glickman*, 200 F.3d at 1184. But even the APA alone is not sufficient for a reverse-FOIA action because judicial review "is not available where . . . 'statutes preclude judicial review' or where 'agency action is committed to agency discretion by law.'" *Chrysler*, 441 U.S. at 317, 99 S. Ct. at 1725 (quoting 5 U.S.C. § 701(a)). As explained above, the FOIA leaves to agency discretion the decision whether to disclose otherwise exempted information; therefore some other law must mandate withholding before the APA can be used to obtain such relief. *See Glickman*, 200 F.3d at 1185 ("Normally, then, an agency has discretion to disclose information within a FOIA exemption, unless something independent of FOIA prohibits disclosure.").

In reply to FHWA's argument that it has failed to state a reverse-FOIA claim, DIBC argues that this Court has federal question jurisdiction over reverse-FOIA cases because the cause of action arises under the APA. True or not, this argument fails entirely to address the issue raised by FHWA. As it stands, DIBC's complaint does not state a cognizable reverse-FOIA claim because the complaint fails to assert a claim under the APA and consequently fails to set forth allegations that FHWA's conduct violated the relevant standards in the APA.[8] Furthermore, DIBC makes no attempt to remedy this deficiency by, for example, seeking to amend its complaint. And even if this Court construed DIBC's supplemental brief

---

[8]Relief is appropriate under the APA in a reverse-FOIA action only if "the agency's decision to disclose was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Glickman*, 200 F.3d at 1184 (quoting 5 U.S.C. § 706(2)(A)). Allegations in DIBC's complaint that the 2007 inspection report qualifies for Exemption 4 under the FOIA do nothing to explain why or how FHWA's decision was arbitrary or capricious.

11

as an attempt to amend the complaint, the claim is still deficient. As explained above, DIBC must identify some law independent of the FOIA that bars disclosure in order to state a claim under the APA; in its supplemental brief, DIBC merely cites to the APA and argues that the 2007 inspection report should not have been disclosed because of Exemption 4 of the FOIA. Unless and until DIBC identifies a law barring disclosure of the 2007 inspection report, DIBC fails to state a reverse-FOIA claim and is unlikely to succeed in that regard.[9]

As to the claims actually alleged in the complaint, none of them state a claim for which relief can be granted. As explained, the first count fails because the FOIA does not provide a private right of action to enjoin disclosure. *Chrysler*, 441 U.S.at 294, 99 S. Ct. at 1714. Similarly, the Critical Infrastructures Protection Act fails to address issues regarding disclosure of information and does not appear to create individual rights enforceable in a civil suit. *See* 42 U.S.C. § 5195c.

Finally, DIBC's breach of contract claim fails to state a claim because it lacks sufficient factual support. *See Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557, 127 S. Ct. 1955, 1966 (2007)) ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). In its complaint and supplemental brief, DIBC makes conclusory statements that FHWA is bound by the 2004 Gateway Agreement because MDOT allegedly

---

[9]Even if DIBC obtains leave to amend its complaint, the record presently before the Court fails to suggest that DIBC would have a strong likelihood of success on a properly pled reverse-FOIA claim because, among other reasons, DIBC is unlikely to succeed in establishing that FHWA's decision to disclose was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

12

entered into the contract as FHWA's agent. Noticeably absent from DIBC's filings are facts explaining how and under what legal theory this alleged agency relationship arose. Under these circumstances, the Court does not find it plausible that FHWA—a non-party to the 2004 Gateway Agreement—could be held liable for a breach of contract. *See id.* ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation and quotation omitted)).

Because the Court concludes that DIBC has failed to state a claim on which the requested relief can be granted, DIBC cannot succeed on the merits of the case as the case is currently postured. This factor weighs heavily against the imposition of a TRO.

**B. Other Factors**

Although the Court's foregoing analysis suggests that this case is ripe for dismissal,[10] the possibility remains that DIBC could successfully amend its complaint and identify a law that bars disclosure of FOIA-exempt information. Therefore, the Court proceeds to consider the remaining TRO factors.

In regard to irreparable harm, DIBC alleges that it will be placed at a competitive disadvantage and suffer commercial harm if the 2007 inspection report is disclosed by FHWA. DIBC fails, however, to explain how or why these harms will manifest themselves.

---

[10]Defense counsel filed a motion to dismiss or, in the alternative, for summary judgment on September 29, 2009, raising the same arguments as those presented in his response brief to the present motion. Once briefing on that motion is complete, the Court will make its final determination as to whether this case should be dismissed for failure to state a claim.

In fact, it remains unclear to the Court whether the 2007 inspection report even contains commercial or financial information.[11] Under these circumstances, the Court believes that the actual risk of irreparable harm to DIBC is minimal.

The final TRO factors require consideration of the public interest and the risk of harm to others. According to DIBC, disclosure of the 2007 inspection report will substantially jeopardize national security by revealing potential vulnerabilities of the Ambassador Bridge to would-be terrorists. Meanwhile, FHWA maintains that the federal government—not DIBC—is charged with ensuring national security. Nonetheless, the federal government has concluded that the public's interest in knowing the condition of bridges exceeds the potential security risk of releasing bridge inspection information. Therefore, FHWA regularly releases inspection reports similar to the one at issue in this case for publicly owned bridges. (*See* Defs.' Resp. Ex. 2 at 4 ("[I]nformation concerning the condition of bridges located in every State that also forms the basis of decisions regarding the expenditure of public funds for their rehabilitation or replacement is a matter of legitimate public interest; and non-disclosure of [such] data does not improve transportation security or protect particular structures."). Having reviewed the parties' arguments, the Court concludes that the public interest and the risk of harm do not support the imposition of a TRO against FHWA.

**V. Conclusion**

In its current form, DIBC's complaint fails to state a claim and, therefore, DIBC is unlikely to succeed on the merits of the case. Furthermore, none of the TRO factors support

---

[11] As quoted above, the 2004 Gateway Agreement asserts that the inspection reports contain "sensitive security information," not confidential commercial or financial information.

the imposition of injunctive relief at this stage of the proceeding.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for a temporary restraining order is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Craig L. John, Esq.
Michael A. Nedelman, Esq.
Steven P. Croley, AUSA