UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT INTERNATIONAL BRIDGE
COMPANY,

      Plaintiff,

v.

FEDERAL HIGHWAY
ADMINISTRATION and JAMES STEELE
in his capacity as Michigan Administrator
for the Federal Highway Administration,

      Defendants.
_____/

Case No. 09-13805

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 17, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On September 25, 2009, the Detroit International Bridge Company ("DIBC") filed a complaint seeking to enjoin the Federal Highway Administration ("FHWA") and its Michigan Administrator James Steele ("Steele") from disclosing a 2007 inspection report regarding the Ambassador Bridge.[1] Since that time, the Court has denied DIBC's emergency motion for a temporary restraining order and DIBC twice amended its complaint. In its

---

[1] "The Ambassador Bridge is North America's busiest border crossing," allowing travelers to cross the river separating Detroit and Windsor. (Compl. ¶ 10.)

second amended complaint, DIBC seeks contract reformation and declaratory relief. Presently pending before the Court is defendants' motion to dismiss. Defendants initially filed the motion on September 29, 2009, and have since revived the motion with additional arguments in light of DIBC's amendments to the complaint. The motion has now been fully briefed and the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(e)(2). For the reasons set forth below, the Court grants defendant's motion.

## I. Factual and Procedural Background

The circumstances giving rise to this case begin with a contract entered into by DIBC, the private owner of the Ambassador Bridge, and the Michigan Department of Transportation ("MDOT"). Among other things, that contract, the 2004 Gateway Agreement, requires DIBC to provide MDOT with annual inspection reports regarding the safety of the bridge. In anticipation of requests for the report from third parties, the contract provides:

> The PARTIES agree that the bridge inspection reports contain sensitive security information, the public disclosure of which would be contrary to the public interest, and that, subject to the ultimate authority of the courts, the reports are exempt from public disclosure under the terms of the Freedom of Information Act. To assure that this exemption is recognized, the DIBC shall prominently stamp or print upon each page of the reports provided to [MDOT]: "CONFIDENTIAL REPORT - THIS REPORT IS EXEMPT AND NOT TO BE DISCLOSED UNDER THE FREEDOM OF INFORMATION ACT, IN ACCORDANCE WITH THE AGREEMENT BETWEEN THE BRIDGE COMPANY AND MDOT FOR THE GATEWAY PROJECT." If a request is made for access to, or a copy of, a bridge inspection report, by any entity other than the Federal Highway Administration, [MDOT] will promptly notify the DIBC and will assert its exemption from disclosure under the Freedom of Information Act.

(Compl. Ex. A ¶ 24E.) As permitted by this clause, MDOT releases inspection reports to FHWA upon request.

2

DIBC initially filed this lawsuit in an attempt to enjoin FHWA from disclosing the 2007 inspection report, provided by MDOT, to Congressman John Dingell in response to a Freedom of Information Act ("FOIA") request. In its original complaint, DIBC alleged that such disclosure would violate the FOIA, 5 U.S.C. § 552; violate the Critical Infrastructures Protection Act, 42 U.S.C. § 5195c; and amount to a breach of the 2004 Gateway Agreement. On October 13, 2009, the Court denied DIBC's emergency motion for a temporary restraining order based largely on the fact that DIBC's original complaint failed to state a claim upon which relief could be granted. (Docket entry no. 11.)

At present, FHWA has released both the 2007 and 2008 inspection reports to Congressman John Dingell. In its second amended complaint, DIBC seeks reformation of the 2004 Gateway Agreement such that the clause allowing MDOT to release inspection reports is deleted or amended to require FHWA to keep the inspection reports confidential. DIBC also seeks declaratory relief adjudging disclosure of the inspection reports violative of the Trade Secrets Act, 18 U.S.C. § 1905, and the Critical Infrastructures Protection Act, 42 U.S.C. § 5195c, effectively enjoining future disclosure of any inspection report by FHWA or anyone else. Beyond implications arising from the request for declaratory relief, DIBC does not actually assert claims under the FOIA, the Administrative Procedures Act, the Trade Secrets Act, or the Critical Infrastructures Protection Act.[2] Defendants seek dismissal of DIBC's second amended complaint on grounds that they are not parties to the 2004 Gateway Agreement that DIBC seeks to reform.

---

[2] All of these statutes are cited at some point or another in DIBC's second amended complaint.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

### III. Contract Reformation

Drawing on judicial experience and common sense, the Court concludes that DIBC has failed to state a plausible claim for relief in the form of contract reformation. As executed, the 2004 Gateway Agreement is a contract between DIBC and MDOT, not FHWA. To overcome this problem, DIBC invokes agency law and argues that FHWA is a party to the contract as an "undisclosed principal" of MDOT. In support of this argument, DIBC makes numerous allegations that MDOT acted "on behalf of FHWA" to obtain a contract that would allow MDOT to disclose inspection reports to FHWA. The purported evidence of this alleged agency relationship is that the 2004 Gateway Agreement contains a clause allowing such disclosure and FHWA's admission that the federal government conditions the provision of federal funds for construction projects on being fully informed regarding the status of the structures involved.

DIBC's agency argument relies on conclusory allegations that defy common sense. That MDOT may have required federal funding to fulfill its end of the bargain in the 2004 Gateway Agreement and, in turn, needed to satisfy conditions to federal funding—i.e. access to and disclosure of inspection reports to the FHWA—does not make MDOT an agent of FHWA or the federal government. To hold otherwise would make the federal government an undisclosed principal of every contracting party that obtains federal benefits by contracting in compliance with federal statutes, rules, regulations, or conditions. Such a result is absurd. Furthermore, DIBC's allegation that MDOT and FHWA entered into an agency agreement some time before the 2004 Gateway Agreement is nothing more than a

threadbare recital of the elements of an agency relationship. (*See* Second Amended Compl. ¶ 16.) Considering that MDOT and FHWA are separate government agencies representing separate governmental units, the Court concludes that DIBC's agency allegations lack plausibility. Because this means that FHWA is not a party to the 2004 Gateway Agreement, DIBC cannot obtain reformation of that contract by suing FHWA.

This leads to a second important observation: DIBC asks this Court to exercise its discretionary, equitable powers to reform a contract without involving MDOT, a signatory to the contract. *See Liberty Nat'l Bank & Trust v. Life Ins. Co. of Cincinnati*, 901 F.2d 539, 547 (6th Cir. 1990) ("A remedy based on mutual mistake is equitable, not legal. In selecting an appropriate equitable remedy, the trial court has broad discretionary power; appellate review is correspondingly narrow." (citation and quotation omitted)). Even assuming FHWA is an undisclosed principal of MDOT, MDOT remains liable on the 2004 Gateway Agreement. *See Penton Publ'g, Inc. v. Markey*, 212 Mich. App. 624, 626, 538 N.W.2d 104, 105 (1995). The Court would be remiss to alter the rights and obligations of the parties under the contract without MDOT's participation. Given the allegations by DIBC, it is conceivable that reformation of the relevant contract terms would adversely affect MDOT's ability to obtain and use federal funds on the project. Furthermore, without MDOT named as a party to this case, it would be difficult for this Court to determine whether the contract negotiations were actually flawed by mistakes by the negotiating parties. For these and the aforementioned reasons, DIBC's claim for contract reformation is dismissed.

**IV. Declaratory Relief**

DIBC's arguments for declaratory relief are tied to its theory that FHWA and MDOT

acted pursuant to an agency relationship. (*See* Second Amended Compl. ¶ 99.) Because the Court has concluded that DIBC's agency allegations fail to support a claim upon which relief can be granted, DIBC's requests for declaratory relief are also subject to dismissal.

To the extent DIBC seeks declarations, notwithstanding any alleged agency relationship, that the inspection reports contain information protected by the Trade Secrets Act, FOIA exemptions, and the Critical Infrastructures Protection Act, the Court repeats its prior observations regarding such requests: "'requests for declaratory relief warrant caution' because they 'require courts to face the difficult task of distinguishing between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies.'" (October 13, 2009, Opinion and Order at 8 (quoting *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2003)). At this point in time, the 2007 and 2008 inspection reports have been released and cannot be retracted. Additionally, DIBC did not include claims in its second amended complaint pursuant to any of the aforementioned statutes. Under such circumstances, the Court would exceed its authority if it were to pass judgment on those issues. *See Mills v. Green*, 159 U.S. 651, 653, 16 S. Ct. 132, 133 (1895) ("The duty of [the Supreme Court], as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.") Therefore DIBC's second amended complaint is dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that defendants' motion to dismiss is **GRANTED**.

A judgment consistent with this opinion shall enter.

> s/PATRICK J. DUGGAN
> UNITED STATES DISTRICT JUDGE

Copies to:
Craig L. John, Esq.
Michael A. Nedelman, Esq.
Steven P. Croley, AUSA